IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DANIEL P. STARR, )
)
      Plaintiff, )
)
vs. ) Case No. 01-CV-279-TCK-FHM
)
STATE OF OKLAHOMA; and )
OFFICER DOWNS, )
)
      Defendants. )

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action. In his amended complaint (Dkt. # 5), Plaintiff claims that Defendant Downs violated his rights under the Fourth Amendment and Equal Protection Clause. On August 29, 2003, the U.S. Magistrate Judge filed his Report and Recommendation (the "Report") (Dkt. # 51) recommending that Defendant's motion for summary judgment be granted. The Report addressed Defendant's motion for qualified immunity almost exclusively with reference to Plaintiff's Fourth Amendment claim. By Order filed September 30, 2003 (Dkt. # 58), the Court adopted the Report and granted Defendant's motion for summary judgment. The Court also denied Plaintiff's motion for leave to file a second amended complaint. Judgment was entered in favor of Defendant on October 1, 2003 (Dkt. # 59). Plaintiff appealed the ruling to the Tenth Circuit Court of Appeals. By Order filed November 17, 2004, the Tenth Circuit affirmed this Court's grant of summary judgment but only as to Plaintiff's Fourth Amendment claim, concluding that Defendant Officer Downs was entitled to qualified immunity on that claim. However, the appellate court remanded for further proceedings Defendant's motion for qualified immunity with respect to Plaintiff's claim under the Equal Protection Clause. On December 20, 2004, the mandate from the Tenth Circuit was filed of record. See Dkt. # 76.

Plaintiff has now been given opportunities to support his accusations of discriminatory enforcement in violation of the Equal Protection Clause. For the reasons discussed below, the Court finds that Defendant Downs is entitled to entry of summary judgment.

## *BACKGROUND*

In its Order and Judgment, filed November 17, 2004 (Dkt. # 76), the Tenth Circuit Court of Appeals set out the factual background of this matter as follows:

> About 1:30 a.m. on March 10, 2001, Plaintiff, an African-American individual, entered a friend's basement apartment in a building allegedly used for drug trafficking. Plaintiff, however, was there simply to obtain a place to stay for the night. He asked his friend if he could stay with him and, upon receiving permission, decided to purchase groceries for the friend, himself, and a neighbor. He emerged from the building approximately ten minutes after he entered. He then got into his car and began a trip to a convenience store.
>
> Plaintiff's activities had been under police surveillance. He soon noticed a police car, driven by Officer Downs, following him, so he pulled over to the side of the road and stopped before Officer Downs activated his police car lights or siren. Officer Downs walked up to Plaintiff's car and asked whether Starr had any drugs in the car. Downs then ordered Plaintiff out of the car. When Plaintiff complied, Downs handcuffed him and placed him in the front seat of the police vehicle.
>
> In the police car Officer Downs resumed his drug-related questioning. Downs obtained Plaintiff's name and radioed to dispatch for a record check. He eventually learned that Plaintiff had an outstanding warrant for first degree rape, rape by instrumentation, and robbery. Downs informed Plaintiff of the warrants and arrested him.
>
> Although the summary-judgment filings do not provide clear timing information, at some point another police vehicle arrived on the scene. A female officer, later identified as Officer Sherrill, got out of the vehicle and proceeded to conduct a search of Plaintiff's automobile. Carrying a flashlight, she entered Plaintiff's car, took an object out, and brought it to Officer Downs, who was in his police vehicle with Plaintiff. Downs told her to return the object to the car because he did not want it. She went back to Plaintiff's car, found his wallet under the armrest, and delivered it to Downs. The successful records check may have relied on identification documents contained in the wallet.
>
> Plaintiff was later convicted of the rape charges entered in his computer record.

> While incarcerated, he filed this lawsuit, naming Officer Downs and the State of Oklahoma as Defendants. The State was dismissed from the action, apparently without objection from Plaintiff. After obtaining Plaintiff's deposition testimony, Officer Downs filed a motion for summary judgment, arguing entitlement to qualified immunity. Plaintiff, upon learning the identity of Officer Sherrill, sought to amend the complaint to add Sherrill and the City of Tulsa as Defendants. The magistrate judge to whom the case was referred issued a report, which recommended granting Downs' summary-judgment motion and denying Plaintiff's motion to amend. The district court adopted and affirmed the magistrate judge's report and recommendation. This appeal followed.

(Dkt. # 76, at 3-5 (footnotes omitted)). As indicated above, the Tenth Circuit affirmed this Court's entry of summary judgment in favor of Defendant Downs on Plaintiff's Fourth Amendment challenges to the legality of the stop and subsequent search of his vehicle. After determining that Plaintiff had no notice that his equal protection claim was subject to summary judgment and therefore had no opportunity to support his accusations of discriminatory enforcement, the Tenth Circuit remanded this matter for further proceedings on the equal protection claim. See id. at 12.

By Order filed January 18, 2005, the Court directed Plaintiff to file a supplemental brief in response to Defendant's assertion of qualified immunity on all federal claims with specific reference to Defendant's motion for qualified immunity on Plaintiff's Equal protection claim. Plaintiff was advised that to avoid entry of judgment in favor of Defendant under applicable law, he must demonstrate with reference to the Equal protection claim that:

> 1) the official violated a constitutional or statutory right; and 2) the constitutional or statutory right was clearly established when the alleged violation occurred. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" If so, we must subsequently ask "whether the right was clearly established." If the plaintiff does not satisfy either portion of the two-pronged test, the Court must grant the defendant qualified immunity.

Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002) (citations omitted). On February 16, 2005, Plaintiff filed his supplemental brief in response to Defendant's assertion of qualified

3

immunity (Dkt. # 88). On April 18, 2005, Defendant filed his supplemental reply to Plaintiff's supplemental response and motion for summary judgment pursuant to Fed. R. Civ. P. 56 on Plaintiff's equal protection claim (Dkt. # 93). Plaintiff initially failed to file a response to Defendant's motion for summary judgment. After being given an opportunity to respond, he filed his response (Dkt. # 111) to Defendant's motion for summary judgment on June 6, 2007. Defendant filed a reply (Dkt. # 113). Plaintiff filed a surreply (Dkt. # 114) to Defendant's reply. Plaintiff also filed a motion to amend (Dkt. # 115) to name an additional defendant, Officer Sherrill. Counsel for Officer Sherrill entered a Special Appearance (Dkt. # 116) and filed a response (Dkt. # 120), requesting that the motion to amend be denied. Plaintiff filed a reply (Dkt. # 121).

For the reasons discussed below, the Court finds that Defendant Downs is entitled to summary judgment on Plaintiff's claim of racial profiling. Therefore, his motion for summary judgment shall be granted. Plaintiff's motion to amend to name an additional defendant shall be denied.

## *ANALYSIS*

### A. Summary judgment standard

Entry of summary judgment, pursuant to Fed. R. Civ. P. 56, is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990) (citing Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir. 1988)). "However, the nonmoving party may not rest on its pleadings

but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics, 912 F.2d at 1241 (citing Celotex Corp v. Catrett, 477 U.S. 317, 324 (1986)).  Although the court cannot resolve material factual disputes at summary judgment based on conflicting affidavits, Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991), the mere existence of an alleged factual dispute does not defeat an otherwise properly supported motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant. Hall, 935 F.2d at 1111.  Similarly, affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. Id.  Conclusory or self-serving affidavits are not sufficient. Id.; see also Salguero v. City of Clovis, 366 F.3d 1168, 1177 n. 4 (10th Cir. 2004); Murray v. City of Sapulpa, 45 F.3d 1417 (10th Cir. 1995). The trial judge shall grant summary judgment if the evidence, viewed in the light most favorable to the non-movant, fails to show that there exists a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Anderson, 477 U.S. at 250.

Where a *pro se* plaintiff is a prisoner, a court authorized "Martinez[1] Report" (Special Report) prepared by the agency involved in the alleged constitutional violations may be necessary to aid the court in determining possible legal bases of relief for inartfully drawn complaints.  See Hall, 935 F.2d at 1109.  On summary judgment, the court may treat the Special Report as an affidavit, but may not accept the factual findings of the report if the plaintiff has presented conflicting evidence. Id. at 1111.  This process is designed to aid the court in fleshing out possible legal bases of relief from inartfully drawn *pro se* prisoner complaints, not to resolve material factual disputes. The plaintiff's

---

[1] Martinez v. Aaron, 570 F.2d 317, 318-19 (10th Cir. 1978).

5

complaint may also be treated as an affidavit if it is sworn under penalty of perjury and states facts based on personal knowledge. Id. The court must also construe plaintiff's *pro se* pleadings liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972).

## B. Plaintiff's Equal protection claim

"[T]he Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment." Whren v. United States, 517 U.S. 806, 813 (1996). An officer's reasonable belief that probable cause exists for a traffic stop does not affect the availability of a separate selective enforcement claim under the Equal Protection Clause. Marshall v. Columbia Lea Regional Hosp., 345 F.3d 1157, 1166 (10th Cir. 2003). This claim does not require proof that Plaintiff was stopped without probable cause or reasonable suspicion to believe he committed a traffic violation or other crime. But he must prove that Defendant exercised his discretion to enforce the law on account of his race, which requires proof of both discriminatory effect and discriminatory purpose. See United States v. Armstrong, 517 U.S. 456, 465 (1996). When the claim is selective enforcement of the traffic laws or a racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose. See Chavez v. Ill. State Police, 251 F.3d 612, 634-48 (7th Cir. 2001); Gardenhire v. Schubert, 205 F.3d 303, 319 (6th Cir. 2000); United States v. Bell, 86 F.3d 820, 823 (8th Cir. 1996) ("To establish discriminatory effect in a race case, the claimant must show people of another race violated the law and the law was not enforced against them."). Discriminatory effect may by proved with specific evidence of similarly situated non-minority motorists who were not stopped for the traffic violation, or with statistical or other evidence which

generally proves that members of a protected racial group receive less favorable treatment than nonmembers. Chavez, 251 F.3d at 636; Farm Labor Organizing Comm. v. Ohio State Highway Patrol, 308 F.3d 523, 534 (6th Cir. 2002); United States v. Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002).

To show discriminatory purpose, a plaintiff must prove that the officer's decision to stop his vehicle was at least partially based on race. Bell, 86 F.3d at 823 (citing United States v. Brown, 9 F.3d 1374, 1376 (8th Cir. 1993)). Discriminatory purpose "implies more than . . . intent as awareness of consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." Brown, 9 F.3d at 1376 (quoting Wayte v. United States, 470 U.S. 598, 610 (1985)). A defendant alleging selective law enforcement based on race need not prove the officer lacked any race-neutral reason for conducting the traffic stop. Farm Labor Organizing Comm., 308 F.3d at 538. "[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the [practice] bears more heavily on one race than another." Washington v. Davis, 426 U.S. 229, 242 (1976). A litigant alleging racial profiling must produce "some evidence" of both discriminatory effect and discriminatory intent. United States v. Alcaraz-Arellano 441 F.3d 1252, 1264 (10th Cir. 2006) (applying standard announced in Armstrong, 517 U.S. at 470, to claim of selective law enforcement).

If the plaintiff makes a prima facie showing of both discriminatory effect and purpose, the burden shifts to the officer to show the same enforcement decision would have been made even if race had not been considered. Bell, 86 F.3d at 823 (citing Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 819 n. 2 (4th Cir. 1995)). While a *prima facie* equal protection claim may be proved

7

by direct evidence of racial discrimination, Johnson v. Crooks, 326 F.3d 995, 1000 (8th Cir. 2003), it is more commonly based on circumstantial evidence. Kim v. Nash Finch Co., 123 F.3d 1046, 1059 (8th Cir. 1997) (there will seldom be 'eyewitness' testimony concerning racially discriminatory mental processes). An officer's discriminatory selective law enforcement may be inferred from evidence of the officer's pattern and method of performing traffic stops and arrests; relevant departmental policies and training governing the officer's conduct; failure to uniformly comply with the relevant training and supervisory instruction received; the questions presented and statements made by the officer to vehicle occupants; the specific events of the traffic stop at issue; and any other relevant information which may support an inference of discriminatory purpose in this context. Marshall, 345 F.3d at 1168; United States v. Woods, 213 F.3d 1021, 1022-23 (8th Cir. 2000) (discussing Minnesota's policy and task force report on racial profiling).

In this case, Plaintiff's bald assertion that he was the subject of racial profiling is meritless. The question is limited to whether Plaintiff has submitted evidence that Defendant stopped him, rather than other similarly situated non-black individuals, because of his race. Plaintiff has offered no evidence that Officer Downs does not stop non-African Americans under similar circumstances. Instead, Plaintiff makes only conclusory statements of personal opinion that he was stopped because of his race.[2] The Court has carefully reviewed the pleadings provided by Plaintiff and can find no

---

[2]In his supplemental brief (Dkt. # 88) filed after the Tenth Circuit remanded this matter for consideration of Plaintiff's racial profiling claim, Plaintiff stated "[c]itizen's (sic) are just not normally removed from their car's (sic) and placed in handcuffs for minor traffic infractions. But in racial profiling any blackman in a nice car must be into drugs and any apartment building housing black people must be used for drug trafficking. A blackman in Tulsa can't just be visiting a friend . . . When the Defendant stoped (sic) the plaintiff he had no knowledge of any wants or warrants that were outstanding and he had no reason to place this citizen in handcuffs other than he was a blackman."

allegations reflecting racial animus by Defendant Downs.[3] Nothing in the record suggests that Officer Downs demonstrated racial animus. As the non-moving party, Plaintiff must "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El v. Britton, 523 U.S. 574, 600 (1998). He has failed to do so.

The record establishes that on the night of Plaintiff's arrest, Defendant Downs was part of a surveillance operation targeting multiple locations in the City of Tulsa for drug activities. Downs conducted the operation at 300 South Cheyenne, an apartment building known by Downs to be used for drug trafficking. See Dkt. # 29 at 2. On the same night, other police officers conducted similar surveillance at 1000 North Norfolk and 1600 North Boston Place. See Dkt. # 18, Special Report, Ex. G. Nothing, other than Plaintiff's conclusory allegations, suggests that Officer Downs ascertained his race prior to the stop. Instead, the record reflects that Downs followed Plaintiff because his visit to the apartment building at 1:30 a.m. lasted only 10 minutes, behavior consistent with drug activity. Plaintiff acknowledges that he voluntarily stopped his vehicle when he saw that the patrol car was following him. Plaintiff was ultimately arrested because of outstanding warrants. Plaintiff has presented neither direct nor circumstantial evidence suggesting discriminatory intent.

---

[3]The Court can find only one statement attributed to Defendant Downs regarding Plaintiff's race. According to Plaintiff, when Defendant Downs conducted a record search, he first asked for records for "Daniel Star." When told that "Daniel Star" was white, Plaintiff indicates that Defendant Downs said "your (sic) not white." See Dkt. #s 35, 79 at 9. That statement merely reflects an acknowledgment of Plaintiff's race as an identifying characteristic and does not reflect racial motivation for the stop. In addition, Plaintiff alleges that Defendant Downs asked him why he was at "New Jack." See Dkt. # 35. Plaintiff believes that may have been a reference to "New Jack City," a movie about drug distribution in New York City. That statement, however, supports the conclusion that Defendant followed Plaintiff as he left the apartment because his behavior was consistent with drug activity at the apartment and not because of Plaintiff's race.

9

After viewing the record in the light most favorable to Plaintiff, the Court finds that under the totality of the relevant facts, Plaintiff has failed to identify any affirmative evidence in the record suggesting that Defendant Downs followed him as he exited the apartment building because of an invidious discriminatory purpose. Plaintiff has failed to show that Defendant Downs' conduct violated his rights under the Equal Protection Clause. The Court concludes that the evidence, viewed in the light most favorable to Plaintiff, fails to show that there exists a genuine issue of material fact for trial on a claim of racial profiling, and that Defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment shall be granted.

**C. Issue of whether Plaintiff should be allowed to amend his complaint**

Plaintiff has filed a motion to amend (Dkt. # 115),[4] seeking leave to add a new defendant, Officer Sherrill. According to Plaintiff, Officer Sherrill arrived after he was stopped by Defendant Downs, handcuffed, and placed in Downs' police car. Officer Sherrill assisted with the search and inventory of his car. However, the only claim remaining in this matter on remand,[5] is Plaintiff's claim that the actions of Defendant Downs were based on racial profiling or discriminatory enforcement in violation of the Equal Protection Clause. As discussed above, the Court has determined that Defendant Downs is entitled to entry of summary judgment on that single claim. Because the sole issue remanded for this Court's consideration is the issue of discriminatory enforcement by Defendant Downs, Plaintiff's motion to amend to add Officer Sherrill shall be

---

[4]Plaintiff is advised that pursuant to the Court's Local Rules, any motion to amend must be accompanied by a separate proposed amended complaint. See N.D. LR 9.3(C).

[5]This Court's resolution of Defendant's motion for summary judgment on Plaintiff's Fourth Amendment claim was affirmed by the Tenth Circuit Court of Appeals. Therefore, that issue will not be revisited on remand.

denied.

In the Order remanding this matter for consideration of Plaintiff's claim of racial profiling, the Tenth Circuit also directed this Court to determine "whether Plaintiff should be allowed to pursue a motion to amend to add the City of Tulsa in connection with his equal protection claim." See Dkt. # 76.  Any liability on the part of the City of Tulsa would be dependent on a finding that Plaintiff's equal protection rights were violated by Defendant Downs. In light of the Court's finding that Plaintiff has failed to demonstrate a violation of the Equal Protection Clause, there is no basis for liability on behalf of the City of Tulsa. Therefore, the Court further finds it would be futile to allow Plaintiff to amend his complaint to add the City of Tulsa.

**ACCORDINGLY, IT IS HEREBY ORDERED that**:

1. Defendant's motion for summary judgment on Plaintiff's equal protection claim (Dkt. # 94) is **granted**.
2. Plaintiff's motion to amend complaint (Dkt. # 115) is **denied**.
3. A separate judgment shall be entered in favor of Defendant Downs.

DATED THIS 27th day of September, 2007.

*Terence Kern*

TERENCE KERN
UNITED STATES DISTRICT JUDGE